JAS. W. SIMMONS, administrator of WM. W. DEVEREUX, *et al.*, plaintiffs in error, *vs.* JOHN B. LATIMER, *et al.*, defendants in error.

1. A widow is entitled to dower in all the lands of which her husband died seized and possessed, notwithstanding any judgment against her husband existing at the time of the marriage with the applicant for dower. Under our statutes, the right of dower postpones the liens of judgments.

2. The assets of an intestate are to be applied according to the laws for the administration of estates; and the rights of claimants to such assets are very different from what they were during the life of the intestate. A man's wife has no right to dower in his lands, and if the real estate of the husband be sold under execution during his life time, her rights do not attach; but if the judgment creditor delay until the death of the husband, then the widow's right to dower vests, and postpones the liens of judgments until she can enjoy her dower estate.

Lien of judgments. Dower. Decided by Judge WM. M. REESE, Hancock Superior Court, October Term, 1867.

Wm. W. Devereux, the husband of Ann Devereux, died, leaving real and personal estate. Simmons administered on the estate and found it was insolvent, and that there were va-

rious conflicting claims on the property. For instance, one creditor held a claim made during the war, and Simmons thought that it should be scaled, under the ordinance of 1865. John B. Latimer had an execution against Wm. W. Devereux and his mother Anna, for $2,205 34, principal, $278 70, interest and cost, returnable to April term, 1859, of said Court and also an execution, younger than the former, in favor of Homer L. Holcombe, against deceased alone, for $1,923 00, principal, $110 34, interest, and others held notes and accounts against deceased. In course of administration, Simmons procured an order for the sale of the real estate, and advertised it for sale. Prior to this, said widow had had her dower regularly assigned, by metes and bounds, out of said realty. Meanwhile Latimer had the Holcombe *fi. fa.* levied on all the lands of deceased, intending to sell it and pay off that younger *fi. fa.* with the proceeds, and leave said *fi. fa.* open; and also levied the Holcombe *fi. fa.* on the dower lands of Ann Devereux, and intended selling them also. Deceased, in his lifetime, and after said judgments, sold other lands, which are subject to these *fi. fas.* and they should, as Simmons thinks, be levied on and their proceeds be applied to the payment of the judgments, so that other creditors can get what is in Simmons' hand to pay their debts.

For these reasons, Simmons asked instructions and prayed injunction against Latimer selling, under said *fi. fa.* any of the lands of deceased; and the widow, his co-complainant, prayed that Latimer be enjoined from selling her dower. It was admitted that the judgments were obtained prior to the marriage of Ann Devereux and deceased.

By consent, the injunction was considered as granted, and a motion was made to dissolve it on the ground that there was no equity in the bill. The Court sustained the motion, and this is assigned as error.

C. W. DuBose, E. H. Pottle, for plaintiff in error.

Linton Stephens, for defendant in error.

WALKER, J.

Lord Bacon, in his Reading on the Statute of Uses, Ed. 1642, pp 31–2, says: "The tenant in dower is so much favored as that it is the common by-word in the law that the law favoreth three things: 1, Life; 2, Liberty; 3, Dower." Sir Joseph Jekyll, Master of the Rolls, in Banks vs. Sutton, 2 Wills, 702, says, quoting from 1 Just. 33, b, "that all kinds of dower were instituted for the subsistence of the wife during her life; which right of dower is not only a *legal* but a *moral right.* * * The relation of husband and wife, as it is the nearest, so it is the earliest, and therefore the wife is the proper object of the care and kindness of the husband. The husband is bound by the law of God and man to provide for her during his life, and after his death the moral obligation is not at an end; but he ought to take care of her provision during her own life; * * for unless she has real estate of her own, (which is the case but of few,) she may, by his death, be destitute of the necessaries of life, unless provided for out of his estate, either by jointure or dower; and his real estate is the only *plank* she can lay hold of to prevent her sinking under her distress; thus is the wife said to have a moral right to dower." On page 704, he says: "Dower is also an *equitable right,* and such a one as is a foundation for relief in a Court of Equity. It arises from a contract made upon a valuable consideration; marriage being in its nature a *civil,* and in its celebration, a *sacred* contract; and the obligation is a consideration moving from each of the contracting parties to the other." By the VII chapter of *Magna Charta,* it is provided that, for the widow's dower, shall be assigned unto her the third part of all the lands of husband, which were his during coverture, except she were endowed with less at the church door. Schley's Dig. 37. Littleton, section 37, 33 b., says: By the Common Law, the wife shall have for her dower but the third part of the tenements which were her husband's during the espousals; this third part is called *rationabilis dos,* or *dos legitima,* because

it is the dower that the Common Law giveth.   1 Thomas
Co. Lit. p. 593.   4 Kent's Com., 35.   Dower, by the Com-
mon Law, is the only kind which has ever been in force in
Georgia.   Schley's Dig. p. 74.   Hart vs. McCollum, 28 Geo
R., 480.   By the act of 1760, Cobb's Dig., 161, the manner
in which the wife may relinquish her dower in *all* convey-
ances of lands made by the husband is provided, thus recog-
nizing the Common Law rule as to the right of dower in all
lands owned by the husband during the coverture.   By the
act of 1768, Ibid. 163, the mortgage of the lands by the hus-
band, in which mortgage the wife did not legally join with
her husband, did not bar any widow of her dower in such
mortgaged lands.   By the act of 1826, Ibid. 171, all con-
veyances made by the husband barred his widow of dower, ex-
cept such lands as the husband may have acquired by his inter-
marriage with the applicant for dower ;  " *Provided*, that noth-
ing herein contained shall prevent the widow from her right
to dower in all lands of which her husband may have died
seized and possessed."   By the act of 1842, Ibid. 179, sales
made by the sheriff, under legal process, " *in the lifetime of
the husband*, shall be as good and effectual, in bar of the right
of dower, as if the conveyances were made by the husband
himself."   Is not this a pretty clear intimation that if the
sale be not *not* made in the lifetime of the husband, that the
right of dower is not barred ?   During the life of the hus-
band, the right of the wife to dower is inchoate ; at his death
it becomes vested.   Three things are necessary to perfect the
right of dower : marriage of the wife to the alleged husband ;
seizure of the husband at the time of his death, and the death
of the husband.   These facts appearing, the widow is enti-
tled to dower.   Chapman vs. Schroeder, 10 Geo. R., 321.
The Revised Code, section 1753, says : Dower is the right of
a wife to *an estate for life* in one-third of the lands, accord-
ing to valuation, including the dwelling house, (which is not
to be valued unless in a town or city,) of which the husband
was seized and possessed at the time of his death, or to which
the husband obtained title in right of his wife."   In Green
vs. Causey, 10 Geo. R., 435, this Court decided that the lien

of judgments against the husband obtained prior to the marriage of the applicant, did not defeat the right of dower. That the judgments merely created a *lien* upon the land, and did not defeat the *seizure* of the husband. Whether the widow took the dower encumbered with the judgments was not decided in that case.

1. This question is settled by the Revised Code. Section 1759 says: "No lien created by the husband in his lifetime, though assented to by the wife, shall in any manner interfere with her right to dower;" and section 1761 says that the amount in money, estimated by the commissioners appointed to assign dower to belong absolutely to her, shall be paid in preference to *all other claims* out of the proceeds of the sale of the land. The husband can create no lien, even with the assent of the wife, which shall in any manner interfere with her right to dower, and the amount awarded to her by the commissioners appointed to assign dower, shall be paid in preference to all other claims. Is not a judgment a lien created by the husband? It is a mere lien, and does not defeat his seizure. And then the statute says the widow shall have an estate for life in all the lands of which her husband died seized. By section 3603: "The widow of the defendant claiming dower, cannot be dispossessed of the mansion," by virtue of a sheriff's sale, although the officer is authorized to turn out the defendant, his heirs or tenants, or assignees since the judgment. Sec. 3601. If the dower right be subject to the incumbrance of the judgment, certainly the officer would be authorized to give the possession of the property to the purchaser; but he is expressly prohibited by the Code from so doing.

2. It was insisted, however, that the rights of the creditor having attached, his lien cannot be postponed by the subsequent marriage and death of the debtor. The lien is created by the law and the law also creates an estate called dower; which shall have preference as to any particular tract of land must depend upon the facts. If the judgment creditor, in the lifetime of the debtor, levy on and sell the land of his debtor, the right of dower is gone; but if he delay until the

death of the judgment debtor, the effects left are to be administered according to the laws applicable to the estates of deceased persons.  During the lifetime of the debtor a judgment is the highest lien which probably can exist upon his property; and if sold under the judgment, the proceeds of the sale will by the law, be applied to the oldest lien against it; but in the distribution of the proceeds of the sales of the same property, in the course of administration, judgments are postponed until four other classes of debts are paid, viz: 1st. Funeral expenses.  2d. Expenses of administration, including a provision for the support of the family.  3d. Taxes and other debts due the State or the United States.  4th. Debts due by the deceased as executor, administrator, or guardian for the estate committed to him as such, or any debt due by the deceased as trustee, having had actual possession, control and management of the trust property; and then comes, 5th. Judgments, mortgages and other liens created during the lifetime of deceased.  Here are two classes of debts which must reasonably be created after judgment liens, and are to be paid before such liens.  Other debts may be created after the judgment liens attach, and yet be paid prior thereto. The law has so provided, and it furnishes to the respective parties the measure of their rights.  Among the necessary expenses of administration, and to be preferred before all *other debts,* is the provision for the support of the family, to be ascertained as follows, etc.:  "And the appraisers, whether the estate be solvent or not, shall assign in property or money, a sufficiency from the estate for the support and maintenance of the widow and children, for the space of twelve months from the date of administration, to be estimated according to the circumstances and standing of the family previous to the death of the testator or intestate, and keeping in view also the solvency of the estate.  Rev. Code, Sec. 2530.  Here the support of the family is regarded as a "debt."  If the property had been sold in the lifetime of the husband by the sheriff, the proceeds would have been applied to the judgment; but on the death of the debtor, the rights of the family attach and postpone, and in fact displace the lien of

the creditor's judgment *pro tanto*. The question then becomes one to be settled under the laws governing the disposition of the assets of one deceased. This is no new idea in Georgia. See Palmer vs. Stephens, R. M. Charlton's Rep., 56; Watson vs. Watson, 1 Kelly Rep., 266. In this case, Judge Warner delivering the opinion, p. 270–1, says: "It was argued at the bar that in the lifetime of Watson, the judgment creditors could have proceeded to levy upon and sell this identical property, now in the hands of the executors, in satisfaction of their debts; therefore, they were entitled to the same rights now. (How like the argument in this case?) The counsel for the defendants in error seem to overlook the fact, that the *title* to the property was in Watson at the time of his death, although they might have divested the title by levy and sale in his lifetime; yet failing to do so, the same is now assets in the hands of the executors, and the sovereign power of the State has declared the manner in which those assets shall be disposed of, he having died chargeable as the guardian of the plaintiffs in error." In this case I am disposed to adopt the opinion of Judge Warner, page 270, of the case just cited, where he says: "We are of the opinion, the intention of the Legislature is too clear, and the words of the act too plain, for us to entertain any doubt upon this question."

In this case the question as to whether Simmons, the administrator, was entitled to an injunction, was not passed upon by this Court. The Court below decided Mrs. Ann Devereux took her dower subject to the lien of the judgments against her husband, existing, at the time of her marriage with him. A majority of this Court hold that this was error. Her right of dower is superior to the lien of the judgments, and they must be postponed 'until she shall have enjoyed her dower estate.

We are aware that it has been held that where the judgment liens exist at the time of the marriage, the widow must take her dower, subject to them. Robins vs. Robins, 8, Black, etc., (2 a,) Rep., 174. Perhaps the same rule may have obtained in some other States. We do not know what are the provisions of the statutes of those States, on the

subject of dower, and, therefore, cannot tell whether the decisions were controlled by statutory regulations or not. Our decision is placed upon our own statutes; and under them we hold that the judgment lien is postponed to the right of dower. The lien is not destroyed; the land may be sold, subject to the incumbrance of the dower. It seems to me the right of the widow might have been set up by a claim at law; but the question could as well be determined on the bill; and the question argued before this Court and decided, was, whether under the facts of the case, the dower was subject to the lien of the judgments, or not; and a majority of the Court hold that it is not.

Judgment reversed.

Note.—Warner, C. J., concurred, and Harris, J., dissented; but neither wrote out any opinion.